UNITED STATES, Appellee,

v.

Specialist Bryan K. ZIOTS, 190–54–8568, United States Army, Appellant.

ACMR 9102571.

U.S. Army Court of Military Review.

11 March 1993.

For Appellant: Colonel Malcolm H. Squires, Jr., Captain Clayton R. Diedrichs, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Donna L. Barlett, JAGC, Captain Samuel J. Smith, Jr., JAGC (on brief).

Before, De GIULIO, BAKER and WALCZAK, Appellate Military Judges.

## OPINION OF THE COURT

WALCZAK, Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members. Contrary to his pleas, the appellant was found guilty of assault consummated by a battery on a child under the age of sixteen (four specifications) in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C.A. § 928. The assaults occurred on four occasions. The appellant was sentenced to a bad-conduct discharge and confinement for two years. The convening authority approved only so much of the sentence as provides for a bad-conduct discharge and confinement for fifteen months.

This case concerns the degree of permissible parental discipline. The appellant argued that his actions, which formed the basis for the charged offenses, were properly motivated to correct the stepchild's behavior and the force used was reasonable. The government, on the other hand, argued that appellant's disciplinary measures were excessive and went beyond the bounds of reasonable force permitted in parental discipline.

## I.

### Facts

On 16 July 1991, the appellant told his three-year-old stepson to put away his toys. The child responded saying, "No Daddy, you do it." To get the child's attention so that he would realize that he was not to "smart off" to his parents, the appellant grabbed the child's cheeks. The child began to squirm, at which time the appellant grabbed harder.

On 6 August 1991, the appellant noticed that someone had taken his grease gun out of its place and squirted grease all over the room. Believing his stepson was the culprit, appellant grabbed the child by the shoulders and confronted him. The child said, "Did not" and shook his head. The appellant called the child a liar and hit him with "a closed fist somewhere in the area of his eyes and once on the back." Appellant continued to strike the child "about four times on the upper back." The child began to squirm and was struck in the lower rib cage. Appellant maintained that at all times he was trying to hit him on the rear and never intended to strike him on the head. Appellant also testified that he only spanked the child to teach him not to play with dangerous tools and chemicals, and that he never intended to injure him. Appellant then sent the child into another room to stand in the corner. Later, when the appellant entered the room, appellant placed his hand on the child's back and "shoved him into the corner." In the process the child's stomach hit the corner while his head struck the wall. Approximately ten minutes later, the appellant called the child to where he was sitting and "may have struck his [child's] arm with the cigarette [appellant] had in [his] hand."

Still later on 6 August, the appellant played with his stepson pretending to be a "wild dog". He chased the boy around the house and when he caught his son he bit and sucked the child's jaw and nose leaving red marks.

Additionally, the government presented medical testimony that because of the colo-

ration of the several bruises on the child's body, the child was struck on different occasions during the period of 26 July to 5 August.

## II.

### Instructions as to Parental Discipline

■ In his first assignment of error, the appellant claims that the military judge erred by refusing to instruct the court members on the defense of parental discipline in accordance with the Model Penal Code.

Prior to findings, the defense requested that the military judge instruct the members in accordance with the Model Penal Code standard concerning parental discipline. The military judge denied the request. Rather, he tailored the reasonableness standard taken from *United States v. Schiefer*, 28 C.M.R. 417 (A.B.R.1959), to the evidence.

■ The Model Penal Code standard for permissible parental discipline was first applied to military law in *United States v. Brown*, 26 M.J. 148, 150 (C.M.A.1988), where Chief Judge Sullivan discussed the two-prong test for determining whether a parent's use of force upon a child constitutes permissible discipline. The two-prong test looks at the parental purpose and degree of force. First, the discipline must be for a proper motive and, second, the punishment must be moderate in degree. That standard was further incorporated into military practice. *See United States v. Robertson*, 36 M.J. 190 (C.M.A 1992); *United States v. Gowadia*, 34 M.J. 714 (A.C.M.R.1992); and *United States v. Scofield*, 33 M.J. 857 (A.C.M.R.1991). The instruction provided to the court was properly tailored to the evidence and provided a sufficient standard to judge the appellant's conduct. While the military judge did not instruct in accordance with the Model Penal Code, the defense did not object. Even if error, appellant's failure to object to the instruction as given constitutes waiver absent plain error. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 920(f); *United States v. Smith*, 34 M.J. 200 (C.M.A.1992); *United States v. Valdez*, 35 M.J. 555 (A.C.M.R.1992).

We do not find, under the facts of this case, plain error or that the appellant was prejudiced by the error. *Cf. Valdez*, 35 M.J. at 562.

## III.

### Sufficiency of the Evidence

■ Next, the appellant claims that the evidence is insufficient to support the findings of guilty. Applying the two-prong standard announced in *Brown*, appellant argues that his purpose in punishing the child was to correct the child's misbehavior and that this purpose went unrebutted at trial. He further claims that if the parental purpose is undisputed, the government must prove beyond a reasonable doubt that the force used was not moderate. Appellant claims the government failed to prove this prong of the test.

Here, as in *Gowadia*, the totality of the evidence proves beyond a reasonable doubt that regardless of appellant's motivation in striking his son, appellant went beyond the use of reasonable or moderate force allowed in parental discipline. The massive physical trauma, coupled with the repeated blows used, goes beyond the bounds of reasonableness. We are convinced, after weighing the evidence in the record and making allowances for not having personally observed the witnesses, of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987); *United States v. Harper*, 22 M.J. 157 (C.M.A.1986).

## IV.

### Opinion of Expert Witness

■ The appellant also contends that the military judge committed plain error when he allowed an expert witness to testify that the victim was truthful. We disagree.

After noting that the child's story contained some contradictions, and after telling the defense counsel that he did not believe the child's statement that the child had been hit in the eye by the appellant,

**1010**

the expert witness stated on redirect examination that he believed "there is a core of truth which is not contradictory." At the military judge's suggestion, the defense counsel objected, and the trial counsel was permitted to rephrase the question. The expert witness, a medical doctor, went on to explain that he believed some of what the child said, and did not believe other parts. He related that he believed that the child thought he was telling the truth when he said that he had been struck by a parent.

We find the expert witness' testimony provided an explanation for contradictions from a three-year-old victim, much like permissible testimony concerning child abuse syndrome and rape trauma syndrome. *See United States v. Carter*, 22 M.J. 771 (A.C.M.R.1986), *aff'd*, 26 M.J. 428 (C.M.A. 1988). The expert's testimony did not equate to the witness becoming a "human lie detector".

▮ Additionally, whatever effect this testimony may have had was later nullified when the appellant testified that he did, in fact, strike his son. Accordingly, we find no merit in appellant's assignment of error.

### V.

### Challenges for Cause

▮ The appellant further asserts that the military judge erred when he denied the defense challenges for cause against two court members. The appellant contends that the responses from the two court members during *voir dire* indicate they were biased, and thus were disqualified from sitting as members. Appellant argues that the responses of the two members indicate that they shared strong opinions on the permissible limitation on parental discipline that conflicted with the law. We find no merit to these arguments.

Major B, a court member, in response to questions by the defense counsel during *voir dire*, stated that it is reasonable parental discipline to spank a child on the buttocks. He related that he was physically disciplined as a child and he did not feel he was abused. In determining what constitutes reasonable parental discipline, he would consider bodily harm explaining "when you get into a bruise or any type category like that—I think there is a potential there to be excessive." He went on to remark that "deep bruises, cuts, or anything of that nature would be unreasonable." Major B later maintained that he would listen to the instructions from the military judge concerning permissible parental punishment or discipline and, if they differed from his personal views, he would apply the standard given to him by the military judge. The defense counsel challenged Major B for cause, and the challenge was denied by the military judge.

The defense counsel also challenged for cause Master Sergeant W. That member stated that although he does not spank his child, he believed it was permissible for a parent to use force in disciplining a child. Master Sergeant W related that the permissible limits of parental discipline depended on the circumstances, and that if a parent strikes a child more than once or on an area of the body other than the buttocks, then the force is probably unreasonable. Master Sergeant W responded to a question posed by the defense that if corporal punishment left a bruise, it would indicate unreasonable force had been used. Like Major B, Master Sergeant W stated that he would follow the instructions given by the military judge as to permissible parental discipline, even if it differed from his views. Given their responses, we hold that the military judge did not abuse his discretion. *See United States v. Combs*, 35 M.J. 820 (A.F.C.M.R.1992).

### VI.

### Jurisdiction of Court–Martial

The appellant next avers that his court-martial lacked jurisdiction because the military judge was designated in violation of the Appointments Clause of the Constitution and *Freytag v. Commissioner of Internal Revenue*, —— U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). This issue has recently been resolved in the Government's favor in *United States v. Weiss*, 36 M.J. 224 (C.M.A.1992).

Lastly, appellant argues that the court-martial lacked jurisdiction because the military judge lacked a fixed term of office. This assignment of error is without merit. *See United States v. Graf,* 35 M.J. 450 (C.M.A.1992).

Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), the appellant personally petitions this Court for a new trial on the grounds of newly discovered evidence. We have reviewed the submissions and find that they lack merit.

The findings of guilty and the sentence are affirmed.

Senior Judge De GIULIO and Judge BAKER concur.